**Debra LAWS, an individual Plaintiff,**

v.

**SONY MUSIC ENTERTAINMENT, INC. dba Epic Records, a Delaware Corporation; and Does 1 through 50, inclusive Defendants.**

No. CV 03–2038.

United States District Court, C.D. California.

Nov. 4, 2003.

Rickey Ivie and Kendall E. James of Ivie, McNeill & Wyatt, Los Angeles, CA, for Plaintiff Debra Laws.

Russell J. Frackman, David A. Steinberg Matt J. Railo and Paul Guelpa of Mitchell Silberberg & Knupp LLP, Los

Angeles, CA, for Defendant Sony Music Entertainment Inc.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BAIRD, District Judge.

### I. INTRODUCTION

This case involves alleged misappropriation of Debra Law's voice and name by Defendant Sony Music Entertainment, Inc. ("Sony") in connection with the sound recording and video entitled "All I Have" performed by Jennifer Lopez. Plaintiff Debra Laws alleges that "All I Have" samples extensively from her 1980 sound recording "Very Special" without Plaintiff's prior consent. Currently before the court is Defendant's Motion for Summary Judgment.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is a professional vocalist and recording artist who has achieved international acclaim. *Declaration of Plaintiff Debra Laws, ("Dec. Laws")*, ¶¶ 1–5. She first recorded the song "Very Special" in 1981 for Elektra Records. *Id.* ¶ 2. Since that time, she has continued to perform the song throughout the United States and internationally. *Id.* ¶¶ 5–7.

In 1979, Debra Laws entered into a recording agreement with Spirit Productions (which her brother founded). *Declaration of Paul Guelpa ("Dec. Guelpa")*, Exh. G; *Declaration of Hubert Laws ("Dec. H. Laws")*, ¶¶ 5–6. That same year, Spirit Productions entered into a production agreement with Elektra Records, a division of Warner Communications. *Dec. Guelpa*, Exh. F. Spirit Productions agreed to produce master recordings of Debra Laws for Elektra. *Id.* The agreement specifically gave Elektra the right to copyright the productions, which Elektra did in

1981. *Id.* ¶ 4; *Supplemental Declaration of Paul Guelpa ("Supp. Dec. Guelpa")*, Exh. A. The agreement also granted Elektra the right to license the productions. *Id.*

On November 26, 2002, Warner licensed to Sony Music a non-exclusive license and right to use a portion of Debra Law's recording of "Very Special" in the song "All I Have" performed by Jennifer Lopez. *Dec. Guelpa*, Exh. I. The agreement required Sony to include a credit stating "Featuring samples from the Debra Laws recording 'Very Special.'" *Id.* at 53.

Sony subsequently released both a music recording and a music video incorporating portions of "Very Special" into "All I Have." Plaintiff alleges that "All I Have" has been a hugely successful recording and music video. *Complaint*, ¶¶ 10–11. Sony did not receive permission from either Spirit or Laws, and neither have received compensation. *Dec. H. Laws*, ¶ 6; *Dec. Laws* ¶ 10.

Laws filed an action against Sony on February 20, 2003 in Superior Court for Los Angeles County. Plaintiff brings five causes of action against Defendant Sony: (1) statutory misappropriation of a name or voice for commercial purpose (under California Civil Code § 3344); (2) common law invasion of privacy (misappropriation of name or voice); (3) unfair competition (under California Business and Professions Code § 17200 *et seq.*); (4) constructive trust; and (5) preliminary and permanent injunction.

Sony removed the case to this court on March 21, 2003. On March 28, 2003, Defendant sought to have the court join Elektra as a "necessary party" under Federal Rule of Civil Procedure 19. The court denied the motion. On September 22, 2003, Sony filed the summary judgment motion currently before the court. The parties have fully briefed the motion.

Plaintiff filed an *ex parte* motion on October 28, 2003 to extend the summary judgment hearing in order to conduct additional discovery. Defendant filed an opposition on October 29, 2003. By minute order dated October 31, 2003, the court denied the motion. The court now considers the summary judgment motion.

## III. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of informing the district court the basis of the summary judgment motion, and of demonstrating the absence of a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Katz v. Children's Hosp. of Orange County*, 28 F.3d 1520, 1534 (9th Cir.1994). On an issue for which the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

Once this initial burden is satisfied, the non-moving party is required to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts' showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (internal quotations omitted); *see Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir.1988). Where the standard of proof at trial is preponderance of the evidence, the non-moving party's evidence must be such that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The evidence is viewed in the light most favorable to the non-moving party and all justifiable inferences are to be drawn in the non-movants favor. *Id.* at 255, 106 S.Ct. 2505.

## IV. ANALYSIS

■ Defendant seeks summary judgment on the following two grounds: 1) Plaintiff's claims are preempted by the Copyright Act of 1976, and 2) Plaintiff's claims are barred by the First Amendment. The court initially considers the preemption argument.[1]

### A. Preemption

■ Plaintiff brings only state law claims against Defendant. She does not allege any copyright violations. She contends that "copyright law was not intended to apply to this type of action." *Opposition*, 10, ln 6.

The 1976 Copyright Act extends federal copyright protection to "original works of authorship fixed in any tangible medium of

---

1. The court rejects Plaintiff's contention that Defendant lacks standing to bring a preemption claim. One need not have an ownership interest in a copyright to assert a preemption defense.

expression." 17 U.S.C. § 102(a). The Act specifically preempts rights that are equivalent to those within the scope of copyright as specified in the Act. 17 U.S.C. § 301. Section 301 of the Copyright Act states:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright ... are governed exclusively by this title. [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State. 17 U.S.C. § 301(a).

Congress clearly expressed the purpose of this section: "The intention of Section 301 is to preempt and abolish any rights under the common law or state statutes, that are equivalent to copyright and that extend to works within the Federal Copyright Law." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130, reprinted in 1976 U.S.C.C.A.N. 5659, 5746.

■ However, not all state causes of action are preempted. Preemption exists only if 1) the state right is "within the subject matter of copyright" as defined by the Act; and 2) the state right is "equivalent" to any exclusive rights of a federal copyright. 17 U.S.C. § 301(a); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir.2001); *Motown Record Corp. v. George A. Hormel & Co.*, 657 F.Supp. 1236, 1238 (C.D.Cal.1987).

■ At the heart of the current controversy is the issue of whether the claimed rights fall within the subject matter of the Copyright Act. The subject matter of the Copyright Act is described in 17 U.S.C. §§ 102 and 103. It includes musical works and sound recordings. 17 U.S.C. § 102. However, a person's name, voice, likeness and overall persona are not copyrightable. *Fleet v. CBS, Inc.*, 50 Cal.App.4th 1911,

1918, 58 Cal.Rptr.2d 645 (1996) ("Civil Code section 3344 is intended to protect rights which cannot be copyrighted").

Plaintiff contends that her state claims fall outside the scope of the Copyright Act because she is challenging Defendant's unauthorized use of her name and voice, not the use of the sound recordings. Defendant asserts that Plaintiff's voice was fixed in a sound recording, and as such is copyrightable. Therefore, the court must determine whether Defendant's use of Plaintiff's song "Very Special" constituted the use of her voice/name/persona or a sound recording.

The Ninth Circuit has held that the use of a person's voice does not fall under copyright protection and that state law claims are not preempted. *See, Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988); *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1098–1100 (9th Cir.1992). However, in those cases, the expropriator had imitated the person's voice without permission. The courts found that a person's voice is more personal than a work of authorship. *Id.* Both courts associated a person's voice with part of her identity. *Id.* In neither case was the voice "fixed" in a work of authorship. *Id.*

In other "identity" cases, courts have found common law or state statutory claims not preempted. In *Wendt v. Host International, Inc.*, the Ninth Circuit reversed a grant of summary judgment. *Wendt*, 125 F.3d 806, 811 (9th Cir.1997). In so doing, the court acknowledged that actors could bring a common-law right of publicity action against defendants for using animatronic robots that bore some likeness to the actors. *Id.* The court noted that actors do not lose the right to control the commercial exploitation of their likeness. *Id. See also, White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir.1992) (recognizing state and com-

mon law right to publicity action for identity misappropriation).

Similarly, courts have held that claims stemming from the unauthorized use of a photograph are not preempted. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003–1005 (9th Cir.2001); *KNB Enterprises v. Matthews*, 78 Cal.App.4th 362, 92 Cal.Rtpr.2d 713 (2000). These cases also determined that the person's image/identity was being misappropriated, rather than a copyrightable work. *Id.* A person's name, image, and likeness are not protected by the Copyright Act, therefore state law actions were not preempted. *Id.*

However, when a person's "identity" claims are essentially claims regarding the use of a copyrighted work, then courts have found the state claims to be preempted. In *Motown Record*, the defendants had run an advertisement which capitalized upon the tune of a Supreme's song and the group's image. *Motown*, 657 F.Supp. 1236. The court held that the state law claims revolved around the unauthorized use of a copyrighted work. *Id.* The state law claims were merely claims for the reproduction, performance, distribution or display of a copyrighted work within the scope of the Act. *Id.* As such, the state law claims were preempted. *Id.*

In *Fleet v. CBS, Inc.*, actors who had not been paid brought several state law claims against the copyright holder of a movie. *Fleet*, 50 Cal.App.4th 1911, 58 Cal.Rptr.2d 645. The court found that all of the state law claims were preempted by the Copyright Act because the scope of the medium came within the Copyright Act. *Id.* The court found that once the appellants' performances were put on film, they became "dramatic works" "fixed within a tangible medium of expression" within section 102 of the Copyright Act. *Fleet*, 50 Cal.App.4th at 1919–1920, 58 Cal.Rptr.2d 645.

The plaintiffs in *Fleet* had clearly stated that "this is not a copyright infringement case." *Fleet*, 50 Cal.App.4th at 1916, 58 Cal.Rptr.2d 645. The court commented that although the plaintiffs could call their claim whatever they wanted, "if all they are seeking is to prevent a party from exhibiting a copyrighted work they are making a claim 'equivalent to an exclusive right within the general scope of copyright.'" *Fleet*, 50 Cal.App.4th at 1920, 58 Cal.Rptr.2d 645. The court distinguished the case from situations in which other courts had found state law claims not preempted by copyright. *Fleet*, 50 Cal.App.4th at 1921, 58 Cal.Rptr.2d 645. In the non-preempted cases, the state-law claims were based upon the use of plaintiff's image or likeness rather than his or her "copyrightable dramatic or musical performance." *Fleet*, 50 Cal.App.4th at 1922, 58 Cal.Rptr.2d 645.

The court finds that the facts in this case are more similar to those in *Fleet* and *Motown* than to the facts in the other identity cases. Although Plaintiff claims that Defendant's use of the song is without permission, Defendant did receive permission (in the form of a license) from the rightful copyright owner. *See* Exh. I.[2] Plaintiff's complaint revolves around the use of her voice in a sound recording. Sound recordings are protected by copyright. 17 U.S.C. § 102. Defendant used Plaintiff's original voice from the sound recording of "Very Special." *Dec. H. Laws*, ¶ 8. According to Plaintiff, Defen-

---

**2.** Plaintiff relies on language in the contract between Elektra and Spirit for the contention that Sony needed Plaintiff's permission to use "Very Special." Exh. F, ¶¶ 4, 6(c)(iii). In oral argument, Plaintiff's counsel stated that Laws had reserved the right to her voice. However, the language in the contract states that *Elektra* needs to get *Spring's* consent for certain actions. Laws was not a party to the contract which she asks the Court to rely on. In addition, Laws does not assert breach of contract as one of her claims.

dant used the *original recordings* to avoid compensating Plaintiff for her performance. *Id.* ¶ 9. In other words, Defendant used Plaintiff's voice by using the copyrightable sound recording that captured that voice.

Although Defendant credits Plaintiff on the song jacket, the court finds that the one, inconspicuous line does not constitute exploitation of Plaintiff's image or identity. In fact, Defendant was complying with its license agreement by including the credit. Exh. I. Therefore, the addition of the name in the credit cannot remove the fact that Plaintiff is essentially contesting the use of a sound recording which is protected by the Copyright Act.

In essence, Plaintiff has failed to show that the use of her voice in a sound recording amounted to the use of her identity. As such, Plaintiff's state law claims are all preempted by the Copyright Act. Indeed were the court to come to the contrary conclusion, then any vocal sound recording would fall outside the parameters of the Copyright Act because of the use of a person's "voice." This contradicts the express intent of Congress to preempt common law or state statutes that extend to works within the Federal Copyright Law. *See supra,* H.R.Rep. No. 1476.

All of Plaintiff's claims against Defendant arise out of Defendant's use, reproduction, and distribution of Law's song "Very Special." In other misappropriation of name and voice cases, courts have found Plaintiff's claims (unfair competition, right to publicity, invasion of privacy) to be preempted by the Copyright Act. *See, Motown,* 657 F.Supp. at 1240–1241; *Fleet,* 50 Cal.App.4th 1911, 58 Cal.Rptr.2d 645. Plaintiff has only raised state law claims in her complaint. The court finds that 1) the subject matter of the state law claims fall within the subject matter specified by the Copyright Act and 2) the rights are equivalent to those found in the Copyright Act (reproduction and distribution). Accordingly, Plaintiff's state law claims are preempted. Since no claims exist other than the state law claims, the court finds the First Amendment issue moot.

## V. CONCLUSION

Based on the foregoing, the court finds that Defendant has shown that no genuine issue of fact exists. Accordingly, Defendant's motion for summary judgment is **GRANTED.**

**IT IS SO ORDERED.**