Ishmael **BUTLER**, individually and pka
Digable Planets; Maryann Vieira;
and Craig Irving, Plaintiffs,

v.

**TARGET CORPORATION**; Peterson Milla Hooks, Inc.; Sound 80, Ltd. aka Sound 80 A Division of Erickson Plus, Ltd.; and Does 1 through 20, inclusive, Defendants.

No. CV 04–00269 CBM(MCx).

United States District Court,
C.D. California,
Western Division.

June 22, 2004.

Joseph D. Schleimer, Kenneth D. Freundlich, Schleimer & Freundlich, Beverly Hills, CA, for Plaintiffs.

David F. McDowell, Asako Sakai, Morrison & Foerster, Los Angeles, CA, Douglas L. Hendricks, Gloria Young Eun Lee, Morrison & Foerster, San Francisco, CA, for Defendants.

Hirsch Adell, Laurence S. Zakson, Reich, Adell, Crost & Cvitan, Los Angeles, CA, for AFL–CIO (AFTRA).

## ORDER (1) GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTION TO DISMISS; (2) DENYING PLAINTIFFS' ORAL MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

CONSUELO BLAND MARSHALL, District Judge.

The matter before the Court is Defendants' Motion to Dismiss the First, Second and Fourth Causes of Action for Failure to State a Claim. On June 7, 2004, counsel appeared before the Court, the Honorable Consuelo B. Marshall, Chief United States District Judge presiding. At oral argument, Plaintiffs made an oral motion for certification of an interlocutory appeal.

Upon consideration of the papers and arguments submitted, the Court hereby (1) GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss the First, Second and Fourth Causes of Action,[1] and (2) DENIES Plaintiffs' Motion for Certification of an Interlocutory Appeal.

### JURISDICTION

This action is before the Court pursuant to 28 U.S.C. § 1332.

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In or about 1992, plaintiffs Ishmael Butler and Maryann Vieira wrote the jazz/hip-hop music composition *Rebirth of Slick (Cool like Dat)* (the "Song"). In or about 1993, the Song was recorded by plaintiffs Butler, Vieira and Craig Irving (collective-ly, "Plaintiffs") under the name Digable Planets (the "Recording"). The Song has become the "signature song" for Digable Planets, closely associated with the group and the members of the group.

Plaintiffs' voices are prominent and recognizable in the Recording and in television broadcasting of commercials for Target Stores which featured the Recording as the soundtrack (the "Commercials"). The Commercials were part of a national, multimedia campaign, including advertising and signage in Target Stores which featured altered versions of the Song using slogans such as "Jeans Like That," "Denim Like That," "Shoes Like That" and the like (the "Campaign").

The Recording and the Commercials are subject to the jurisdiction of the collective bargaining agreements with the Screen Actors' Guild and American Federation of Television and Radio Artists. The collective bargaining agreement prohibits the use of the Recording in commercial advertising without the express, separately negotiated consent of the recording artists.

On December 10, 2003, Plaintiffs filed a Complaint for (1) Infringement of Right of Publicity, (2) Violation of the Lanham Act, (3) Breach of Contract, and (4) Unfair Business Practices in Los Angeles Superior Court, arising out of Defendants' unauthorized use of Plaintiffs' voices, the Song, the Recording, and the lyrics of the Song in the Campaign.

Defendants removed the action to this Court on January 15, 2004. On January 26, 2004, Defendants filed this Motion to Dismiss the Right of Publicity, Violation of Lanham Act and Unfair Business Practices Causes of Action for Failure to State

---

**1.** Defendants' Motion is granted with respect to Defendants' use of the Recording (defined below) in the Commercials (defined below), but denied with respect to advertising and signage displayed in Target Stores. Defen-dants agreed at oral argument that Plaintiffs' claims with respect to the advertising and signage are not preempted by the Copyright Act and should be sustained.

a Claim. Plaintiffs filed a timely opposition and Defendants filed a timely reply.

## LEGAL STANDARD FOR MOTION TO DISMISS

Under Fed.R.Civ.P. 12(b)(6), a dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). The court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). Where a complaint's state law claims are preempted by federal law, the claims are subject to dismissal under Rule 12(b)(6). *See Falkowski v. Imation Corp.,* 309 F.3d 1123 (9th Cir. 2002).

## DISCUSSION

### I. Standard for Federal Copyright Act Preemption

■ The Copyright Act preempts state law claims when two conditions are met. *See* 17 U.S.C. § 301(a). First, the work at issue must fall within the subject matter of the Copyright Act under sections 102 and 103. *See Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1003 (9th Cir.2001); *Fleet v. CBS, Inc.,* 50 Cal.App.4th 1911, 1919, 58 Cal.Rptr.2d 645 (1996) (citing *Del Madera Props. v. Rhodes and Gardner, Inc.,* 820 F.2d 973, 976 (9th Cir.1987)). Second, the rights asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act—i.e., reproduction, preparation of derivative works, distribution, per-

formance or display. *Id.; Downing,* 265 F.3d at 1003; 17 U.S.C. § 106.

### II. Whether The Work Falls Within the Subject Matter of the Copyright Act

Defendants claim that the Song and the Recording are within the subject matter of copyright law because the Copyright Act explicitly includes "musical works" and "sound recordings." 17 U.S.C. § 102(a)(2), (7).

■ Plaintiffs argue that their claims are not preempted by the Copyright Act because they are based on the unauthorized use of their voices and lyrics, which are not copyrightable.[2] The Ninth Circuit has found that voice is not a subject matter of copyright. "A voice is not copyrightable. The sounds are not 'fixed.'" *Midler v. Ford Motor Co.,* 849 F.2d 460, 462 (9th Cir.1988) (no preemption where car company used "sound alikes" in television commercials); *see also Waits v. Frito–Lay, Inc.,* 978 F.2d 1093, 1100 (9th Cir. 1992) (no preemption where snack food manufacturer's radio commercial featured a vocal performance imitating celebrity's raspy singing voice). *Cf. Downing,* 265 F.3d at 1003–05 (no preemption for use of names and likenesses in a photograph); *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 809–810 (9th Cir.1997) (no preemption where animatronic robots placed in airport bars were based on likeness of celebrity).

In *Laws v. Sony Music Ent., Inc.,* 294 F.Supp.2d 1160 (C.D.Cal.2003) (Baird, J. presiding), a record company obtained a license to sample from a singer's copyrighted sound recording for use in a new song. The singer, Debra Laws, argued that her state claims fell outside the Copy-

---

**2.** Lyrics, however, are copyrightable. *See* 17 U.S.C. § 102 ("musical works, *including any* *accompanying words* " are copyrightable).

right Act because she challenged the defendant's "unauthorized use of her name and voice, not the use of her sound recordings." *Id.* at 1163. The court found that the plaintiff failed to show that the use of her voice in a sound recording amounted to the use of her identity. *Id.* at 1165. Judge Baird distinguished *Midler* and *Waits* by noting that both involved an expropriator who imitated the person's voice, and neither involved a voice "fixed" in a work of authorship. *Id.* at 1163. Defendants assert that the critical distinction between voice impersonation and sound recordings is that the former cannot be copyrighted and the latter can. *See Motown Record Corp. v. Hormel & Co.*, 657 F.Supp. 1236, 1239 (C.D.Cal.1987) (Rea, J., presiding) (preemption where defendants ran an advertisement capitalizing on the Supremes' image singing "Dinty Moore, My Dinty Moore," to the tune of the Motown classic "Baby Love").

■ Plaintiffs have not alleged that the Commercials used impersonations of their voices, but the Recording itself. Nor have they alleged that their images, names or likenesses were used in the Campaign. Moreover, Plaintiffs' claims arising out of Defendants' use of the advertising slogans "Jeans Like That," "Denim Like That," "Shoes Like That," and the like are based on a transformation of the lyrics of the Song, which fall within the subject matter of copyright. *See supra* n. 2. Therefore, the first prong of the preemption analysis is satisfied.

## III. Whether Plaintiffs' Claims Assert Rights Equivalent to Those Protected by the Copyright Act

■ The second requirement for copyright preemption is that the right asserted

under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act. The *Fleet* court held that "a right is equivalent to rights within the exclusive province of copyright when it is infringed by the mere act of reproducing, performing, distributing, or displaying the work at issue. A claim asserted to prevent nothing more than the reproduction, performance, distribution, or display of a . . . performance captured [in a tangible medium] is subsumed by copyright law and preempted." *Id.* at 1924, 58 Cal. Rptr.2d 645. A state cause of action is not preempted if it has an "extra element" which changes the nature of the action. *Del Madera Props.*, 820 F.2d at 977.

### A. Right of Publicity

■ To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove (1) the defendant's use of the plaintiff's identity, (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise, (3) lack of consent; and (4) resulting injury. *Downing*, 265 F.3d at 1001. California also provides a statutory remedy for this cause of action. *See* Cal. Civil Code § 3344.[3]

In *Midler*, the Ninth Circuit held that "when a distinctive voice of a professional singer is widely known and is deliberately imitated in order to sell a product, the sellers have appropriated what is not theirs and have committed a tort in California." The *Midler* tort is a species of violation of the "right of publicity," the right of a person whose identity has a commercial value—most often a celebrity—to control the commercial use of that identity. *Waits*, 978 F.2d at 1098. The

---

**3.** Under section 3344, a plaintiff must prove all the elements of the common law cause of action. In addition, the plaintiff must prove a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose. *Downing*, 265 F.3d at 1001.

*Midler* court recognized that when voice is a sufficient indicia of a celebrity's identity, the right of publicity protects against its imitation for commercial purposes without the celebrity's consent. *Id.; Midler,* 849 F.2d at 463.

■■ Here, Plaintiffs have not alleged that their voices were imitated for commercial purposes. *See supra* Part II. Thus, their claims based on the use of the Recordings in the Commercials are preempted. However, their claims based on the distortion of the Song title and lyrics for use in the Campaign (i.e., use of the advertising slogans "Jeans Like That," "Denim Like That," "Shoes Like That") are not preempted. *See, e.g., Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831 (6th Cir.1983) (common law right of publicity implicated by defendant's marketing of toilets under the brand name "Here's Johnny"—Johnny Carson's signature "Tonight Show" introduction—without Carson's permission). Plaintiffs similarly allege here that "Cool Like Dat" is the " 'signature song' for Digable Planets, closely associated with the group and the members of the group," and Defendants have used advertising and signage in Target Stores featuring "distorted versions of [the Song,] using slogans such as 'Jeans Like That,' 'Denim Like That,' 'Shoes Like That' and the like." At oral argument, Defendants agreed that Plaintiffs' claim relating to the advertising and signage should not be dismissed. *See supra* n. 1. Therefore, the Court GRANTS the Motion to Dismiss the Right of Publicity Claim with respect to the use of the Recording in the Commercials, but DENIES it with respect to the advertising and signage in Target Stores.

**B. Unfair Business Practices and Unfair Competition**

■ With respect to this claim for unfair business practices, Plaintiffs allege that Defendants caused the Commercials to be created and broadcasted and caused the Campaign to be widely used, confusing Plaintiffs' fans into believing that Digable Planets endorsed Target and consented to the use of their voices, music, lyric and "signature song." The legislative history of the Copyright Act states: "[S]ection 301 [of the Copyright Act] is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and passing off even where the subject matter involved comes within the scope of the copyright statute." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 13, reprinted in 1976 U.S.C.C.A.N 5659, 5748.

Defendants contend that such allegedly infringed right of unfair competition is equivalent to rights specified in section 106, under the right of reproduction and distribution. Indeed, at least with respect to the use of the Recording in the Commercials, Plaintiffs appear to be asserting a right "which is infringed by the mere act of reproduction, performance, distribution or display." *Motown Record,* 657 F.Supp. at 1239 (citing 1 M. Nimmer, The Law of Copyright § 1.01[B][3] at 1–11–12 (1984)). Therefore, this claim is preempted insofar as it is based on Defendants' use of the Recording in the Commercials.

■ With respect to rights asserted in connection with the signage and advertising, however, more than reproduction and distribution have been alleged—in this case, lyrics have allegedly been "distorted" and used in a widespread advertising campaign, which allegedly confused Plaintiffs' fans into believing that Digable Planets endorsed Target. The allegation that the "distorted lyrics" "confus[ed] Plaintiffs' fans into believing Digable Planets endorsed Target Stores" constitutes an "extra element" that precludes preemption. The conduct alleged here is not limited to

1058

the use of a licensed recording as background music in the commercials—here, Defendants have also allegedly taken the lyrics to Plaintiffs' "signature song" (and, in particular, the distinctive chorus and title of the Song) out of context and used them in connection with a wide multi-media advertising campaign. At oral argument, Defendants conceded that Plaintiffs' claims with respect to the advertising and signage are not preempted. *See supra* n. 1. Therefore, the Court GRANTS the Motion to Dismiss the Unfair Competition cause of action with respect to the use of the Recording in the Commercials, but DENIES it with respect to the advertising and signage in Target Stores.

**C. Lanham Act**

■ Section 43(a) of the Lanham Act covers infringement of a trademark, false designation of origin, and a false or misleading description or representation of a fact that would create confusion or deceive as to the affiliation, connection, association, sponsorship, approval or source of goods, services, or other commercial activity. Courts have recognized false endorsement claims under the Lanham Act for unauthorized imitation of distinctive attributes where those attributes amount to an unregistered commercial "trademark." *See, e.g., Waits,* 978 F.2d at 1106 (citing *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir. 1979) (uniform worn by star of movie was confusing similar to plaintiff's trademark uniforms)); 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 28:15 (4th ed.2002). *Waits* held that "[a] false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim, for it alleges the misuse of a trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to

the plaintiff's sponsorship or approval of the product." *Id.* at 1110. The Ninth Circuit has also held that celebrities may sue for "false endorsement" under the Lanham Act based on the unauthorized use of persona in commercial advertising. *Wendt,* 125 F.3d at 812–15; *Abdul-Jabbar,* 85 F.3d at 410–412; *White,* 971 F.2d at 1399–1401. "A false designation of origin claim brought by an entertainer under § 43(a) of the Lanham Act in a case such as this is equivalent to a false association or endorsement claim . . . and the 'mark' at issue is the plaintiff's identity." *Landham v. Lewis Galoob Toys, Inc.,* 227 F.3d 619, 626 (6th Cir.2000).

"The choice between two federal statutes requires an analysis of both, to see if they are indeed incompatible or if they can be harmonized, and if they are incompatible to decide which one Congress meant to take precedence." *Id.* The Copyright Act provides that "[n]othing in this title annuls or limits any rights or remedies under any other Federal statute." 17 U.S.C. § 301(d). Moreover, courts have applied both statutes to the same conduct, accord *Downing,* 265 F.3d 994, and the Fifth Circuit recently stated that "[t]he federal Copyright Act does not preempt the federal Lanham Act, or vice versa." *Alameda Films S.A. de C.V. v. Authors Rights Restoration, Corp. Inc.,* 331 F.3d 472, 483 (2003).

**1. Whether the Lanham Act Protects the Song, its Title or its Lyrics**

Defendants claim that the Lanham Act does not protect the use of the Digable Planets' song or its title. Defendants rely on a Second Circuit decision, *EMI,* where a company used a stock recording of Benny Goodman's song, "Sing, Sing Sing" and imputed words "Swing, Swing, Swing" in a commercial. The Second Circuit rejected

the claim that the song served as a trademark for itself, stating:

> a musical composition cannot be protected as its own trademark under the Lanham Act. A contrary conclusion would allow any copyright claim for infringement of rights in a musical composition to be converted automatically into a Lanham Act cause of action. While there are many cases in which both claims are appropriate, cases involving trademark infringement should be those alleging the appropriation of symbols or devices that identify the composition or its source, not the appropriation or copying or imitation of the composition itself. Concluding that a song can serve as an identifying mark of the song itself would stretch the definition of trademark—and the protection afforded under § 43(a)— too far and give trademark law a role in protecting the very essence of the song, an unwarranted extension into an area already protected by copyright law.

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.,* 228 F.3d 56, 64 (2d Cir.2000), as amended. *See also Oliveira v. Frito–Lay, Inc.,* 251 F.3d 56, 62–63 (2d Cir.2001) (no trademark or service mark in a performing artists' signature performance).

However, the *EMI* court also stated that "[c]ourts have found that other distinctive identifying features merit protection as marks under § 43(a), including an entertainer's distinctive voice, a celebrity's persona ..." *Id.* at 63. *See also Oliveira,* 251 F.3d at 62. The court upheld the Lanham Act claim because of the potential for consumer confusion stemming from the misappropriation of the title of the Plaintiffs' song, stating: "Titles of works of artistic expression, including films, plays books, and songs, that have acquired secondary

meaning are protected from unfair competition under § 43(a) ..." *Id.* at 63.[4]

Here, Plaintiffs allege that Defendants misappropriated the title and primary lyric of the Song and used it as the motif for Target Stores' entire advertising campaign. This claim differs from a copyright claim as it refers to possible consumer confusion as to the plaintiffs' sponsorship or approval of the product. Therefore, the Court GRANTS the Motion to Dismiss the Lanham Act cause of action with respect to the use of the Recording in the Commercials, but DENIES it with respect to the advertising and signage in Target Stores.

## IV. Certification for Interlocutory Appeal and Stay Pending Appeal

28 U.S.C. § 1292(b) provides that a district judge shall state in an order that is not otherwise appealable if she is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." That section further provides that an application for an appeal shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

The Court does not find that the issues presented in this order (copyright preemption and trademark protection of a signature song used by defendants in commercial advertising) are ones as to which there is substantial ground for difference of opinion. *See, e.g., Midler,* 849 F.2d at 462 ("If Midler were claiming a secondary meaning to [her song] or seeking to pre-

---

4. "[W]ords and short phrases such a names, titles, and slogans" are not subject to *copy-right* protection. *See* 37 C.F.R § 202.1.

vent the defendants from using that song, [her claims would be preempted].”); *Sinatra v. Goodyear Tire & Rubber Co.*, 435 F.2d 711 (9th Cir.1970) (unfair competition claim based on use of song as basis for advertising campaign preempted by copyright); *Motown Record*, 657 F.Supp. at 1239; *Oliveira*, 251 F.3d at 62–63 (a musical composition cannot serve as a trademark for itself).

## CONCLUSION

The Court (1) GRANTS Defendants’ Motion to Dismiss the First, Second and Fourth causes of action with respect to the use of the Recording in the Commercials, but DENIES it with respect to the advertising and signage displayed in Target Stores, and (2) DENIES Plaintiffs’ Motion for Certification of an Interlocutory Appeal.

**IT IS SO ORDERED.**